## CARPENTER et v WARNER et

Ohio Appeals, 8th Dist, Cuyahoga Co

No. 9861. Decided September 30, 1929

Messrs. F. G. Carpenter, Esq., and M. L. Locher, Esq., Cleveland for Carpenter et.

Messrs. Simmons, DeWitt & Vrooman, Cleveland, for Warner et.

**VICKERY, PJ.**

Of course, if there was an abatement of commissions already earned, that would discharge the obligation to pay commission, and there would be no reason why the rest of the contract should provide for the **re-payment** of this money.

It seems, from the guarded way in which the language was used, that there was some ulterior purpose in having this contract drawn as it was. Apparently the purpose was well known to the parties and the words in the contract recited "for reasons that are well known to the parties", which we can only assume, in view of the fact that apparently there was not to be any **real** abatement, that it was but a **lending** of this money that was afterwards to be recovered by the defendants in error, by allowing them the entire five dollar membership fee until the whole $1040 had been repaid to them out of the one dollar extra bonus.

Now the suit apparently was brought upon this contract and the question was whether that contract was ambiguous, so that parol testimony could be introduced. The plaintiffs below claim that this matter simply covered a loan of $1040, defendants claiming that it was an abatement of commissions, as is suggested in the argument, that had been embezzled or not accounted for by the agents of the plaintiffs below. On the other hand, it is claimed that these guarded words, "on account of sales conditions understood between the parties", might apply to the fact that the conditions of sale were so bad that the company had not realized enough money to pay a dividend, and that if a dividend was not paid, it would be impossible to make further sales. One theory would apply as well as the other and inasmuch as it is not possible to read in this contract altogether that this $1040 was to be a gift, or was not to be accounted for in any way, we cannot help but think that the contract was very ambiguous indeed and the parties had a right to explain what this contract meant, what the purpose of it was, and what the consideration was for the advancement of this money; and apparently the matter was all submitted to the jury and the jury found for the plaintiffs.

Now in 1927, after the consolidation of these two companies under the name of The Penn Continental Savings Association, the plaintiffs in error, Frank G. Carpenter and Milton Locher, were appointed liquidating trustees, and this suit was brought against them. Apparently they had some money in their possession, but the condition of the association is unimportant for us now to discuss.

It is urged by the plaintiffs in error that the court refused to permit them to introduce certain evidence that **they** offered to show what this contract meant, but there is no statement as to what they expected to prove by such evidence and, therefore, it is not important; but they urged that the contract was **unambiguous.** Of course, if it was unambiguous it would

be improper for them, as well as the other side, to introduce any evidence, but if anyone can read that contract and know what it means without explanation or parol testimony, they have much more legal acumen than I have, for I confess that to me it is perfectly blind, unless there be evidence to show what the purpose was.

We have gone over this record, heard the arguments of counsel and familiarized ourselves with the briefs, and we can come only to one conclusion, and that is, that the parties below **loaned** this money and were to be repaid in the manner set out in the contract, but because of the legal impossibility of performing that contract, it took away the obligation of the plaintiff's below to **perform** their part of the contract. In other words, their performance of this contract was made impossible by the legislative act and, therefore, they were relieved from performing it. In that event $1040 of their money had been loaned to the plaintiffs in error, or the companies which they represented, and there would be no reason why it should not be recovered from the liquidating trustees; in other words, that the verdict of the jury and the judgment of the court thereon was correct, and we finding no error in the record, the judgment will be affirmed.

Sullivan and ~~Levine, JJ~~ concur.